The next case today is United States v. Alex Levin, appeal number 20-1078. Attorney Heit, please introduce yourself again on the record and proceed with your argument. My name is Julia Pamela Heit and I represent appellant Alex Levin. May it please the court, I will first address the sufficiency of evidence argument and hopefully I will have time to address the issue of the jurors being committed by the court to ask questions during this trial. But first as to the sufficiency of evidence, please submit that there was insufficient evidence to establish that Alex Levin knowingly possessed child pornography. Before addressing the specific facts in this case, it should be noted first that in all the cases before this court addressing this issue, there were far more facts that established the element of knowingly that existed here. Because of time constraints, we refer the court to our analysis of these cases on pages 4-6 of our reply brief. Second, this was the case that pitted the government expert against the expert of defense. However, Alex Levin took the stand and denied knowledge that the CP cases were done only on his computer. That appellant took the stand presented a golden opportunity to cross examine him regarding his knowledge. As we will show, the government neglected to ask Alex Levin a single question regarding his knowledge. Perhaps the prosecutor will now tell the court why critical questions pertaining to this issue were bypassed. Counsel, some of the best cross examination is when a lawyer knows how to be quiet. Well, Your Honor, I mean, most prosecutors use the opportunity to ask a defendant when he takes the stand pertinent questions, especially if they believe in their case. But there's no obligation to cross examine a witness. And obviously, the trial strategy here, the calculation was that she didn't need to cross him, perhaps because he came across as so uncredible in the first place. Well, Your Honor, we hope to show by pointing to various factors in our sufficiency argument that it was important to at least ask the questions of Alex Levin, irrespective of what answers that they could expect. I don't want to beat a dead horse, counsel, but Judge Thompson's point is absolutely correct. The question in this case isn't whether the government chose to cross examine your client. It's whether the evidence viewed in the light most favorable, the evidence that exists, viewed in the light most favorable to the government, can rationally support the verdict. And I'm struggling with the notion of why a jury, if it believed the government's experts, and in light of Mr. Levin's own admission or failure to deny that he himself had downloaded the videos, put the videos into his computer in the first place, why the evidence is insufficient to justify that ruling. Yes, there is no dispute that Alex Levin, through the program of Crossfire Shiraz and the Incomplete Program, took the opportunity, as many people did in 2011, to sweep the drives, the entire drives, of individuals he did not know and downloaded thousands of files from those drives onto his computer, included in these thousands of files over 13 CP files. There is no proof that the appellant swept these drives to obtain the CP files. No, but there is proof that the appellant thereafter used a litany of search terms suggestive of an interest in child pornography. So why couldn't a rational jury put together his acquisition of the child pornography, together with his subsequent use of the search terms, and reach the convicts? Well, Your Honor, we will show that the subsequent use of the search program, according to both government witnesses, does not prove that Alex Levin actually saw these images on the screen. No, it doesn't prove it, but it forms the basis for reasonable inference. The government doesn't have to get a snapshot of the defendant staring at the child porn on his computer. The government has to give enough facts that will support a reasonable inference by the jury of the defendant's knowledge and use. And what I'm struggling with is the notion of why this record doesn't meet that standard. Well, Your Honor, I would like to address these points, and I hope to show or establish that it doesn't meet this standard at all in this particular case. Five minutes remaining. Five minutes. There was no proof that he knew that the 13 CT files were included in these massive leaks. The dates that the files appeared on the defendant's computer were October 11, 2011. The last access date for all the files was January 31, 2015. There was no proof any one of these files were accessed between those days. Agent Phillips, the government expert, admitted that the files were not manual user accesses. In plain terms, they were not the result of the computer user, i.e., Alex, clicking on and opening the files for access. In fact, Agent Phillips admitted that he has no indication that these files or the contents were displayed on the screen on that date or any other date. He did not know whether the files were accessed prior to January 31, 2015. This is the government witness. He specifically stated he did not know whether Alex opened these files to see his contents on the screen. Further, this court found in other cases that CT file names was a factor, not conclusive, to be considered on the issue of knowledge. This is not the case here. With respect to the two Seraja cases, Phillips admitted that neither of these files had descriptive file names but consisted of a string of letters and numbers. Yet he maintained that he was able to determine what these files depicted, even if the title did not describe the contents. The fact that the experts who work in this field on numerous CT cases, which aside for the name, did not establish that Alex was able to make the same determination. There were also a number of other files which did not specifically inform the viewer of the contents. You had such names as Tara, referring to the plantation you thought would win, PTHC. If you're not a regular user of photography, how would you know what that term meant? Falco, how would you know what that term meant? How would you know Tara referred to this? Lolita. I mean, there's a book that's accepted that's named Lolita. Petta Woman and her doggie. I mean, there's just no indication to the untrained person, not versed in CT, who would have a clue what these names meant. And again, the government, and this is why the questioning is important, put a question, apparellant, regarding his knowledge of these terms. Yet he chose not to. When he took the witness counsel, when you put your client on the witness stand in direct, did he deny knowledge of what each of these terms meant? He entered a general denial of knowing that there was child pornography on his computer. So, you're arguing specifics, but you or whoever trial counsel was, didn't ask him these specific questions? No, I'm saying that they had the opportunity to explore a subject that needed to be explored in order to complete civil record. I would also point out that... But you're arguing something to us that you deem important, but you or trial counsel didn't ask the defendant that on the witness stand. And remember, the jury got a chance to hear that this is someone who has a master's degree in computer science. Your Honor, especially, especially, since the government probed Alex's answers that his knowledge of computers was average, that was a perfect opportunity to cross-examine Alex and ask, what did he mean by average? We know we have average doctors, we have average scientists, we have average, average all over the place. That doesn't mean you're sophisticated in one particular field, no matter what you do. But however, however, going to the names of the files, agent felt the government's expert admitted that the names of the files alone does not tell you what its contents are. That's time. Pardon me? Your time is up. Thank you, Counselor. Oh, sorry. Okay. Thank you. Thank you. At this time, Attorney Height, if you can mute your device or remain quiet, we'll have Attorney Crum please unmute your device and introduce yourself on the record. Your Honors, may it please the court, Randall Crum on behalf of the government. The evidence the government relied on in this case is precisely the same kind of evidence the government has relied on in other cases to prove knowledge in a case where child pornography, in this case conceded child pornography, is found on a computer, and the question is whether the person knew about it. It's really in three categories. First, the mere fact of the files being found on a computer in Figueroa Luga, this, of course, suggested was some evidence of knowledge because usually you have to search for such files using specific terms. They don't just come to you, although the defendant offered a theory of how they might have, but their mere presence was some evidence. Most powerfully, however, was the evidence that the defendant used multiple search terms associated with child pornography, searching his own computer, from which we draw the inference that he knew what he would find when he did so. The testimony was that that's a manual search. You enter those keystrokes on your keyboard, and the testimony was that it would have returned the specific files. Ten out of the 13 files would have been turned up specifically by those search terms, and a lot of them did have names very closely associated with child pornography terms, referenced in many of this court's cases as indicative of contents containing child pornography. And then finally, the link file. Yes. Counsel, you may have already told us this, but just to be clear, does the record show that the use of these terms, search terms, is directly linked to the content on his computer? The testimony was that the search, the entry of those search terms would have returned those, a certain number of those files. PTHC, for example, appeared in a number of the titles of a number of the charged files or the conceded child pornography files. That entering that would have returned in a list, as it does when you enter a search term, those files. Okay. So that's what the testimony, so then he would have seen it on screen. One point worth noting is that there's a suggestion that we had to, the government had to prove that he opened them. That's not necessarily the case, although an inference can be drawn that if he's entering these search terms and getting the files that he did look at them, but to show knowledge it wasn't essential that we proved that these particular files were open, any particular file was opened by the defendant, but merely that he had the knowledge based on the sum total of circumstantial evidence. And here again, I mentioned briefly the link files, which showed that files with similarly explicit titles had existed and had been opened, although in that case the files couldn't be found. This court has also held that suggestive titles are some evidence of knowing possession, even when the file itself is no longer present on the computer. So these are all types of evidence that the court has considered, and here we had several pieces of that. I would also add, as your honors have noted, the cross-examination was done for a reason as it was. The defense did not attempt to address several of the pieces of the government's evidence, including the presence of the link files or the word wheel query searches, which were critical to the government's case. It was not incumbent on the government to try to bring out his answers, which we would have every reason to believe would not necessarily be truthful, where he didn't do so on direct. And what the government did effectively do was show that his position was implausible, because he was speaking of every week downloading the same hundreds or thousands of files, of Grateful Dead videos, and somehow accidentally receiving these files, and the government eventually, on a cross-examination, changed his story, because that made so little sense that he testified that, in fact, instead of going to the same users each week as he originally testified, he would go to different users, which again undermined the credibility of this defense, in giving the jury every reason to reject it. Based on the implausibility of the defense, plus the affirmative evidence, there was certainly sufficient evidence under this court's precedence. If the court would like me to address any other issues, I can. Otherwise, we rely on our brief for the remaining issues raised in the appeal. Thank you. Thank you, your honors. That concludes argument in this case. Attorney Height and Attorney Crome, you can disconnect from the hearing at this time.